**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MATT MALKAMAKI** | ) | **CASE NO.1:03CV286** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **SEA RAY BOATS, INC., ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Caterpillar, Inc.'s ("CAT"), Motion for Summary Judgment, Sea Ray Boats, Inc.'s ("Sea Ray") Motion for Partial Summary Judgment and MarineMax of Ohio, Inc.'s ("MarineMax") Motion for Partial Summary Judgment. For the following reasons, the Court grants in part and denies in part Caterpillar's Motion for Summary judgment, grants in part and denies in part Defendants Sea Ray and MarineMax's Motions for Partial Summary Judgment.

**FACTS**

In August of 2001, Plaintiff Matt Malkamaki purchased a Sea Ray 540 Sundancer boat from

1

defendant Marinemax for $889,999.64. The boat came equipped with two Caterpillar 3196 marine diesel engines. The boat had an Express Limited Transferable Warranty through Defendant Sea Ray and a service contract with Marinemax which expressly disclaimed all warranties. There was a two-year limited warranty by Caterpillar on the engines that excluded implied warranties and incidental and consequential damages. The engines also came with an extended sixty month warranty on parts.

Plaintiff alleges that after only one day of use Plaintiff brought the boat in for numerous problems, including: malfunctioning GPS system, engine coolant leak, broken sun pad, non working twelve volt reception and problems with the generator. This began a series of problems and repairs that continued for the next several years.

### Plaintiff's Claims Against Caterpillar

Plaintiff alleges that problems with the Caterpillar engines occurred almost immediately after he purchased the Sea Ray boat. Using Defendant CAT's assessment of the problems and repairs incurred by Plaintiff, it appears that on at least eight different occasions, stretching over the course of nearly four years, repairs were performed on the engines in question. Plaintiff alleges that even prior to Plaintiff's purchase of the engines they were experiencing coolant leaks and required repairs. Defendant states that all repairs were performed free of charge per the warranty.

Plaintiff has filed this action against Caterpillar alleging breach of express warranty claims under the Ohio UCC and federal Magnuson-Moss Act, breach of implied warranties of merchantability, particular purpose, and implied warranty in tort. Also, Plaintiff alleges that defendants' actions constitute a violation of the Consumer Sales Practices Act. Finally, Plaintiff alleges that all defendants committed acts and practices that have been declared unfair, deceptive or unconscionable by Ohio

Attorney General rules or by Ohio courts under Ohio Revised Code § 1345.05(A)(3).

The Court has already dismissed Count Five of Plaintiff's Complaint alleging unfair, deceptive or unconscionable acts by Attorney General Rules. Plaintiff concedes that summary judgment is appropriate on his claim for breach of implied warranty of fitness for a particular purpose and agrees that this Court should grant Caterpillar's motion on that claim. Therefore, the Court grants Defendant CAT's Motion for Summary Judgment on Plaintiff's claim for breach of implied warranty of fitness for a particular purpose.

## STANDARD OF REVIEW

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

## I. Analysis of Plaintiff's Claims Against CAT

### Breach of Express Warranties

### UCC

Under the UCC, as adopted by Ohio in Ohio Revised Code § 1302.65, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." R.C. 1302.65 is a codification of UCC 2-607. The Official Comment 4 to UCC 2-607 provides: "The content of the notification need merely be sufficient to let the seller know that the transaction is troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection, UCC Section 2-605, R.C. 1302.63 . Nor is there reason for requiring the notification to be a

4

claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article (R.C. Chapter 1302) need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation."

Moreover, " ... we stress the well-established rule that the 'determination of a reasonable time and the adequacy of notice to the seller are ordinarily questions of fact." *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Co.,* 42 Ohio St. 3d 40 at 51- 52 (1989). "Notice of breach of contract may be sufficient to satisfy statute requiring that buyer notify seller of breach of contract within reasonable time after he discovers or should have discovered any breach or be barred from remedy despite fact that notice does not specifically allege breach of contract, and statute was not meant to exclude possibility that notice may be inferred." *Id.* at syllabus.

Therefore, in order to bring a claim for breach of warranty under Ohio law, " a plaintiff must show: (1) that the goods are nonconforming; (2) that the seller was given a reasonable opportunity to cure the defects; (3) and that the seller failed to repair the defects within a reasonable time or within a reasonable number of attempts." *Abele v. Bayliner Marine Corp*. et al., 11 F. Supp.2d 955, 961 (N.D. Ohio 1997).

### **Magnuson-Moss Claim**

Plaintiff also alleges a breach of the express warranty under Magnuson-Moss Act pursuant to 15 U.S.C. § §2301-2312. The analysis of a Magnuson-Moss violation is the same as that of a UCC breach of warranty action. A plaintiff must show: (1) that the goods are subject to a warranty and are nonconforming; (2) that the seller was given a reasonable opportunity to cure the defects; (3) and that

5

the seller failed to repair the defects within a reasonable time or within a reasonable number of attempts." *Abele* at 961. In determining whether or not a seller is given a reasonable amount of time or a reasonable number of attempts to cure a defect, the Magnuson-Moss Act contemplates that a seller "will be given at least two chances to remedy an alleged defect." *Teerling v. Fleetwood Motor Homes,* No. 99-5926, 2001 WL 641337, at 5 (N.D. Ill. June 4, 2001); *see also Marchionna v. Ford Motor Co.,* No. 94-275, 1995 WL 476591, at 11 (N.D.Ill. Aug.10, 1995) (noting that "[t]he plurality of the word 'attempts' [in the statute] indicates that [the warrantor is] entitled to at least two ... attempts to correct the defect"). Finally, a plaintiff bears the burden of demonstrating that the alleged breach caused him to suffer economic loss. *Haynes v. George Ballas Buick-GMC Truck No. L-89-168,* 1990 WL 210413, at 17 (Ohio App. 1990)(affirming dismissal of breach of warranty claim where "appellant has failed to meet her burden of proof that she suffered economic loss due to the breach of the written warranty"). Thus, in order to make out a breach of warranty and/or Magnuson-Moss violation, Plaintiff has to present evidence that he suffered an economic loss due to a problem with the Caterpillar engine that was subject to a warranty and that Caterpillar failed to remedy the problem pursuant to its warranty.

Caterpillar argues that it is entitled to summary judgment on the following grounds: (a) Plaintiff failed to give proper notice to Caterpillar; (b) no breach exists as Caterpillar fully performed under the terms of the warranty. As Defendant does not dispute that the engines were brought in for repairs on more than two occasions and that the repairs were covered under the terms of the express warranty, the Court finds that Plaintiff has met the first requirement that the goods were nonconforming under the UCC and Magnuson-Moss.

**Notice**

CAT argues that Plaintiff never notified CAT directly of any engine problems. This fact is undisputed as Plaintiff acknowledged this in his deposition testimony. Plaintiff counters by stating that the repairs were all performed by authorized CAT dealers and repair centers creating an apparent agency relationship for purposes of notice. Also, each and every repair performed by a CAT dealer or authorized repair center is sent for processing and review to CAT. CAT states that each CAT authorized dealer is an independent contractor and is not held out as representing the company. It is undisputed that CAT does not have its own repair facilities but farms out all repair work to authorized dealers and repair centers.

The Court finds that the express limited warranty does not specify who buyer is to notify for purposes of breach. Under "Caterpillar Responsibilities" it states:

> If a defect in material or workmanship is found during the standard
> warranty period or the extended warranty period if applicable,
> Caterpillar will, during normal working hours and through a place of
> business of a Caterpillar dealer or other source approved by Caterpillar:
>
> Provide (at Caterpillar's choice) new, Remanufactured or Caterpillar-approved
> repaired parts or assembled components needed to correct the defect.
>
> Replace lubricating oil, filters, antifreeze and other service items made unusable
> by the defect.
>
> Provide reasonable or customary labor needed to correct the defect, including
> labor to disconnect the product from and reconnect the product to its attached
> equipment, mounting, and support systems if required.
>
> Further, under User Responsibilities it states:

> During the standard and extended warranty periods, the user is
> responsible for:
> giving timely notice of a warrantable failure and promptly making the
> product available for repair.

Finally, the warranty states:

> This warranty gives you specific legal rights, and you may also have
> other rights which vary by jurisdiction. To find the location of the nearest Caterpillar
> dealer or authorized repair facility, call (800) 228-2030.

There is no provision found in the warranty indicating where notice of breach should be sent. As there exists an ambiguity as to who should be contacted for purposes of notice of breach, CAT or its authorized repair facilities, such ambiguity must be strictly construed against the drafter CAT. *Smith v. The Eliza Jennings Home,* 176 Oh. St. 351 (1964). Therefore, the Court finds that notice of breach was properly presented to CAT through its authorized dealers and repair centers.

Even if this Court were to find that notice was never given to CAT directly, the Court notes that Defendant Caterpillar admits all repairs were made free of charge to the boat. As CAT paid for the replacement of defective parts and the labor involved in repairing the multiple problems with the engines under warranty for no reason other than it believed the engines were covered under the terms of a warranty, it is reasonable to conclude that CAT was noticed that its engine was nonconforming. As the sufficiency of notice is ordinarily an issue for the trier of fact pursuant to *Chemtrol*, the Court finds that summary judgment would not be appropriate under this alternative scenario.

### **Reasonable Opportunity**

Under both the UCC and Magnuson-Moss, Defendant CAT must be given a reasonable opportunity to repair the alleged defect. Magnuson-Moss sets forth a minimum of two attempts by the

8

warrantor to cure a defect as satisfying the reasonableness requirement.. *Temple v. Fleetwood Enterprises, Inc*. No. 04-3238, 2005 WL 128719 (6th Cir. 2005). There is a factual dispute between Plaintiff and Defendant as to how many times the engines were brought in for repair, but using the Defendants version, each engine was repaired between five and eight times, creating a factual issue on the failure of the warranty.

Defendant argues that the warranty was effective in that each and every time Plaintiff had a complaint the engines were repaired free of charge. When this situation occurs it is not a breach *per se* but a failure of the warranties essential purpose. "Whether a limited remedy fails of its essential purpose is a question of fact." *Trgo v. Chrysler Corp,* 34 F. Supp.2d 581, 590 (N.D. Ohio 1998). Further, whether a nonconformity "substantially impairs an item's worth to the buyer is a determination exclusively within the purview of the fact-finder and must be based on objective evidence of the buyer's idiosyncratic tastes and needs." *McCullough v. Bill Swad Chrysler-Plymouth, Inc.,* 5 Ohio St.3d 181, 186, 449 N.E.2d 1289 (1983). If, after repeated repairs, a vehicle fails "to operate as should a new vehicle," the repair remedy fails of its essential purpose. *Goddard v. General Motors Corp.,,* 60 Ohio St.2d 41 at 47, (citing *Murray v. Holiday Rambler, Inc.,* 83 Wis.2d 406, 265 N.W.2d 513 (1978)).

Here, Plaintiff argues that the remedy available under Defendant CAT's warranty has failed of its essential purpose because repeated repairs have not fixed the engines' problems. Failure to cure defects under warranty within a reasonable time supports a finding that a remedy failed of its essential purpose. *See, e.g., Goddard,* 60 Ohio St.2d at 45, 396 N.E.2d 761 ("[W]hen a seller is unable to fulfill its warranted obligation to effectively repair or replace defects in goods which are the subject

9

matter of the sale, ... the buyer is deprived of the benefits of the limited remedy and it therefore fails its essential purpose.").

The Court finds that there is a genuine issue of material fact whether the limited remedy in the warranty failed of its essential purpose. There is also a genuine issue whether CAT breached the express written warranty by failing to correct the engine problems after being given a reasonable number of attempts to do so. Accordingly, Defendant CAT"s motion for summary judgment on the breach of express written warranty claims is denied.

Defendant next argues that Plaintiff has failed to offer any evidence that any defect currently exists.  While it is true that Plaintiff has not offered expert testimony, Defendants expert testified that there still exists a faulty seal on the oil evacuation line where it attaches to the oil pan.  Also, a missing gasket on the engine's coolant recovery bottle needs to be replaced. Therefore, the Court finds sufficient evidence that the problems complained of by Plaintiff have not been corrected and remain ongoing after the expiration of the warranty period in August 2003, creating sufficient evidence of ongoing economic loss.

### Breach of Implied Warranties

Defendant CAT argues that as lack of notice is fatal to claims of breach of express warranty it is also fatal to claims for breach of implied warranty.  However, as discussed under express warranties, the warranty does not indicate who the buyer should contact, but it can be reasonably concluded per the ambiguous language of the warranty that notice to an  authorized dealers/repair facilities satisfies the notice requirement, as CAT does all repairs through its independent authorized dealers and repair centers.  Therefore, whether proper notice was given, per the warranty remains a question of material

10

fact.

Plaintiff has also shown undisputed evidence of multiple repairs to the engines sufficient to create a genuine issue of material fact whether the engines are merchantable.  Therefore, the Court denies Defendant's motion for summary judgment on breach of implied warranty of merchantability.

Plaintiff does not dispute that implied warranties of fitness for a particular purpose do not apply, and therefore, summary judgment is granted on this issue.

### Implied Warranty in Tort

CAT maintains that when privity of contract exists, a Plaintiff may not proceed on an implied warranty in tort claim.  Plaintiff does not dispute that privity exists but merely states that economic loss is available to plaintiff for tort claims under breach of implied warranty.  In Ohio, "if parties have a contractual relationship, they may not sue in strict liability or implied warranty for their economic damages, but must rely on the Uniform Commercial Code's contractual remedies."  *HDM Flugservice GMBH v. Parker Hannifin Corp.,* 332 F.3d 1025 (6th Cir. 2003).  Here, the parties do not deny privity of contract, therefore, Plaintiff is limited to contractual breach of express and implied warranties.  Summary judgment is therefore granted for CAT on this issue.

Plaintiff states that this Court previously ruled against Defendant on this claim and Defendant is therefore barred from raising this argument again.  Plaintiff misinterprets this Courts ruling.  The plain language of the dismissal order of August 23, 2004, states that, "at this motion to dismiss stage, the Court cannot conclude whether Plaintiff had a contract with Caterpillar so as to preclude recovery of economic losses in tort."  Where such a determination of the existence of a contract and its terms may have been improper on a motion to dismiss, it is  not improper on a motion for summary judgment when

11

evidence outside the pleadings may be reviewed by the Court.

### Plaintiff's CSPA Claims Against CAT

Plaintiff's Amended Complaint alleges violations of the Ohio Consumer Sales Practices Act as codified in O.R.C. 1345.01 *et seq.* On August 23, 2004, the Court dismissed **only** Count Five of Plaintiff's Amended Complaint. Defendant CAT moves for summary judgment on the remaining Counts Four and Six of the Amended Complaint's CSPA claims. Plaintiff erroneously states in his Brief in Opposition that "plaintiff agrees that his CSPA claims against CAT were dismissed by this Court's prior ruling. That being the case there is no CSPA claim remaining against CAT for this Court to consider." As Plaintiff has failed to meet its burden in offering argument or evidence that his CSPA claims should remain against CAT the Court grants summary judgment for CAT on Counts Four and Six of Plaintiff's Amended Complaint.

### Conclusion

The Court grants summary judgment in favor of Defendant CAT on the implied warranty of fitness for a particular purpose under the UCC and Magnuson-Moss and implied warranty in tort. The Court further grants summary judgment for Defendant CAT on Counts Four and Six of Plaintiff's Amended Complaint. The Court denies Defendant CAT's Motion for Summary Judgment on the claims for breach of express warranty under Ohio's UCC and Magnuson-Moss and denies summary judgment on breach of implied warranty of merchantability.

### Plaintiff's Claims Against Sea Ray and MarineMax

Plaintiff alleges breach of warranty claims under Magnuson-Moss and Ohio's UCC, both express and implied, breach of warranty in tort, and violations of Consumer Sales Practices Act, Acts

deemed unfair, deceptive or unconscionable by Ohio Attorney General rules and acts declared unfair, deceptive or unconscionable by Ohio courts. Defendant Sea Ray moves for summary judgment on Count III breach of warranty in tort, and Counts Five and Six regarding unfair, deceptive and unconscionable acts. Defendant Marinemax moves for summary judgment on Count III breach of warranty in tort, and breach of express warranty and Counts Five and Six of Plaintiff's Complaint alleging unfair, deceptive and unconscionable acts.

Plaintiff's Complaint alleges that on August 30, 2001, Plaintiff took the recently purchased boat to Marinemax for repairs which were performed on October 10, 2001. The repairs failed to correct the electrical problems. In October 2001, when the boat was taken out of the water, Plaintiff noticed large chunks of hull were falling off. When Plaintiff contacted Marinemax, they allegedly told him such problems were not unusual and offered to repair them the following boating season. In 2002, Sea Ray took Plaintiff's boat to its repair facilities in Florida and gave Plaintiff a letter stating the boat would be brought up the original factory finish and that there would be no further problems with the hull. Immediately upon receipt of the repaired boat Plaintiff had an expert look it over. The expert found blistering of the fiberglass gel coat among other problems and stated the vessel had not been brought up to the original integrity it was intended to have. Marinemax agreed to repair the boat and performed extensive hull repairs which Plaintiff alleges were unsuccessful. Marinemax tried again and, Plaintiff alleges, failed to make the necessary repairs. In 2004, nearly eleven additional hull problems were discovered by Plaintiff's expert. Plaintiff alleges he has continued problems with the boats generator and the integrity of boat's hull . In the opinion of Plaintiff's expert, the hull has fundamental defects in its lack of resin and cannot be repaired. In addition, Plaintiff's expert opines that core samples of the hull

reveal defects that cannot be repaired.

### **Breach of Express Warranty Against Marinemax**

Plaintiff concedes that Marinemax did not expressly warrant the boat in question and does not dispute that Summary Judgment in favor of Defendant Marinemax as to Count Two of the Amended Complaint should be granted with respect to any breach of express warranty under Ohio law. Therefore the Court grants Summary Judgment for Marinemax on Count Two (Plaintiff's UCC claims) with respect to any breach of express warranty claims under Ohio law.

### **Implied Warranty in Tort**

Sea Ray argues that under both Ohio law and maritime law, a Plaintiff may not recover purely economic damages when they are in privity to a contract. For a case to fall under admiralty law the following requirements must be met: the (1) tort occurred on "navigable waters" and (2) there is a substantial relationship to traditional maritime activity such that the incident had a potentially disruptive influence on maritime commerce." *Leblanc v. Cleveland,* 198 F.3d 353, 356 (2nd Cir. 1999) citing *Jerome B. Grubart, Inc. V. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995). Defendants argue that maritime jurisdiction applies in the case *sub judice* for breach of implied warranties for leisure craft as the problems occurred on navigable waters and a broken boat has the potential to disrupt maritime commerce. In *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986) the Supreme Court held, "whether stated in negligence or strict liability, no products liability claim lies in admiralty when the only injury claimed is economic loss." The Court further held that when there is a warranty the parties should "be left to the terms of their bargain." *Id.* at

14

875. Here the parties have a clearly defined warranty that contains remedies for any malfunction. Therefore, under admiralty law Plaintiff is limited to damages set forth in the express and implied warranties in contract.

Plaintiff argues that this case does not fall under admiralty jurisdiction as some of the alleged defects were not discovered on water but only after the boat had been removed from the water for purposes of cleaning the hull.  Even so, Ohio law also holds that, "if parties have a contractual relationship, they may not sue in strict liability or implied warranty for their economic damages, but instead must rely on the UCC's contractual remedies." *HDM Flugservice GMBH v. Parker Hannifin Corp.,* 332 F.3d 1025 (6th Cir. 2003).  Therefore, regardless of whether this is an admiralty case or not, Plaintiff may not sustain a tort action for breach of implied warranty when he is in privity with the defendants contractually.

Plaintiff argues that the economic loss doctrine does not apply when the purchasor is a non-commercial purchasor.  Plaintiff cites to two cases *Iacono v. Anderson Concrete Corp*. (Ohio 1975) 42 Ohio St.2d 88 and *LaPuma v. Collinwood Concrete,* (1996) 75 Oh. St.3d 64.  These cases are distinguishable from the case *sub judice*.

In *Iacono,* the issue before the Ohio Supreme Court involved a Plaintiff who sued the concrete supplier and the cement company he contracted with to pour a driveway.  Plaintiff's complaint alleged contractual breaches of warranty.  The Court held that the Complaint alleged facts against the supplier sufficient to maintain a tort claim for breach of warranty when there was no privity of contract between plaintiff and the cement supplier.  The case does not hold that the Plaintiff can bring both a tort action and contract action for breach of warranties simultaneously.

15

*LaPuma* as well dealt with the tort claims by Plaintiff against a cement supplier when there was no privity of contract.  Again this is not analogous to the case *sub judice* where both movants have contracts with Plaintiff.  Therefore, this Court grants summary judgment on Count III of Plaintiff's Amended Complaint in favor of Defendants Marinemax and Sea Ray..

### **Count V- Unfair Acts as Declared by Attorney General Rule**

Under RC. 1345.05.(B)(2) Plaintiff alleges violation of the CSPA of a rule adopted by the Ohio Attorney Generals office.  Plaintiff cites to OAC 109:4-3-16(B)14 as the rule that was violated.  This administrative rule deals with the sale of motor vehicles.  This Court granted Caterpillar's motion to dismiss on this claim because plaintiff could not demonstrate that the boat in question was a motor vehicle for purposes of violation of the statute.  This Court grants summary judgment for the two remaining Defendants on this claim.  No Attorney General rule has been cited that is applicable to the transaction in question.

### **Count VI -Unfair Acts as declared by the Courts**

Under the CSPA a consumer has the option of rescinding the transaction or recovering three times the amount of his actual damages or two hundred dollars whichever is greater. R.C. 1345(B).  The consumer may collect treble damages only where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code. *Brzezenski v. Feuerwerker.* 2000 WL

1297669 (Ohio App. 8th Dist.).  Consequently, a consumer may recover damages under the provisions of R.C. 1345.09(B) based on actual damages awarded for a breach of contract claim only if the supplier's actions constituted both a breach of contract and a deceptive or unconscionable practice under the CSPA. *Lockard v. Kno-Ho-Co Community Action Com'n, Inc.* (September 20, 1993), Coshocton App. No. 92-CA-21, unreported; *Lawson v. Mack* (April 19, 1991), Lucas App. No. L-90-230, unreported. The burden of demonstrating the concurrent violation rests with the consumer.

R.C. 1345.09(F) provides:

(F) The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:

1) Consumer brings an action in bad faith or is groundless;

(2) the supplier has knowingly committed an act or practice that violates this chapter.

The General Assembly's use of the word may indicates the award is discretionary, not automatic. *Einhorn v. Ford Motor Co*. (1990), 48 Ohio St.3d 27, 548 N.E.2d 933; *Eckman v. Columbia Oldsmobile, Inc.* (1989) 65 Ohio App.3d 719, 585 N.E.2d 451; *Chegan v. AAA Continental Heating, Air Conditioning, and Bldg.* (Nov. 24, 1999), Cuyahoga App. No. 75190, unreported; *Lockard v. Kno-Ho-Co Community Action Commission, Inc.* (Sep. 20, 1993), Coshocton App. No. 92-CA-21, unreported; *Cyrus v. Journey* (Mar. 11, 1992) Scioto App. No. 91CA1988, unreported. The decision to grant, allocate, or deny attorney fees rests with the sound discretion of the trial court and an appellate court will not disturb such judgment absent an abuse of discretion.

In the case *sub judice* Plaintiff offers the case of *Brown v. Lyon,* 43 Ohio Misc. 14 (Com. Pl.

17

1974) which holds that failure to honor implied warranties, false representations about the merchantability or performance characteristics of the goods or consistently maintains a pattern of inefficiency, incompetency, or continually stalls or evades his legal obligations to consumers, or makes a misleading statement commits a deceptive act under CSPA. Here the allegations and expert testimony of Plaintiff's experts raise genuine issues on the goods sufficient to deny summary judgment on Count VI. Therefore the Court denies Defendants' motion for summary judgment on Count VI of the Amended Complaint.

## **Conclusion**

Having previously addressed Defendant CAT's Motion for Summary Judgment in this Opinion, the Court grants Defendant Marinemax's Motion for Summary Judgment on Count II of the Amended Complaint with respect to claims on express warranty under Ohio's UCC, Count III on implied warranty in tort and Count V. The Court grants summary judgment for Defendant Sea Ray on Count III implied warranty in tort and Count V. All other counts remain.

IT IS SO ORDERED.

| | |
|---|---|
| September 6, 2005 | /s/ Christopher A. Boyko |
| Date | CHRISTOPHER A. BOYKO |
| | United States District Judge |
| | Original signature on file |

19